```
                            FILED
                         MISSOULA, MT

                       2007 FEB 2 PM 3 58

                        PATRICK E. DUFFY
                     BY _____
                           DEPUTY CLERK
```

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| | | |
|---|---|---|
| RONAN TELEPHONE COMPANY, a Montana corporation, and HOTS SPRINGS TELEPHONE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>ALLTEL COMMUNICATIONS, INC., GOLD CREEK CELLULAR OF MONTANA LIMITED PARTNERSHIP, d/b/a VERIZON WIRELESS, VERIZON WIRELESS (VAW), LLC, WESTERN WIRELESS, LLC, and WWC PAGING CORPORATION,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CV 06-99-M-DWM<br><br><br><br><br><br>ORDER |

### I. Introduction

United States Magistrate Judge Jeremiah C. Lynch entered his Findings and Recommendation in this matter on December 4, 2006. Plaintiffs filed objections and are therefore entitled to de novo review of the record. 28 U.S.C. § 636(b)(1). The Parties are familiar with the factual and procedural background so they will

-1-

be recited only as necessary. After de novo review I agree, one exception noted herein, with Judge Lynch's conclusion that Defendants' partial motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure should be granted in part and denied in part.

## II. Analysis

### A. The Standard of Review for a Motion to Dismiss.

Under Rule 12(b)(6) a complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Tanner v. Heise*, 879 F.2d 572, 576 (9th Cir. 1989); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The court must accept all allegations of material fact as true, *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740 (1976), and construe the pleading in the light most favorable to the nonmoving party. *Tanner*, 879 F.2d at 576. "A complaint should not be dismissed if it states a claim under any legal theory, even if the plaintiff relies on a different legal theory." *Haddock v. Board of Dental Examiners of California*, 777 F.2d 462, 464 (9th Cir. 1985).

Nonetheless, dismissal can still be granted if there is a lack of a cognizable legal theory or if there is an absence of facts alleged under a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984). Additionally, the Court is not required to accept legal conclusions cast in the form of factual allegations if those

conclusions cannot reasonably be drawn from the facts alleged. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994) (citing *Papasan v. Allain*, 478 U.S. 265, 286, (1986)).

**B.   Plaintiffs' State Access Tariff Claims Fail.**

Judge Lynch correctly recognized that Counts 1 through 8, Plaintiffs' breach of contract claims predicated upon state access tariff disputes, should be dismissed to the extent they are based upon state access tariffs because federal law preempts them.

The case here presents the question of how to resolve the application of federal and state authority concerning fees between telephone networks of varying size and capabilities. Plaintiffs, local exchange carriers, are seeking to assess state access tariffs on the Defendants who are wireless telecommunication operations, otherwise known as commercial mobile radio services ("CMRS"), for use of the Plaintiffs' facilities to connect with wireline customers within Montana.[1] The disputed traffic is wireless traffic that occurs within the single major trading area ("MTA") that encompasses all of Montana and portions of the surrounding states.  (By definition, all wireless calls that occur within a major trading area are local calls).

The basic tenets of preemption are not contested.  Through Article VI of the Constitution the Supremacy Clause provides that

---

[1] Qwest, a non-party, is the intermediary that routes Defendants' wireless traffic into Plaintiffs' facilities.

federal law can preempt state law by express preemption, field preemption, or conflict preemption. *Ting v. AT&T*, 319 F.3d 1126, 1135 (9th Cir. 2003) (citation omitted). Conflict preemption applies here. The Ninth Circuit addressed conflict preemption in *Ting*: "[c]onflict preemption is found where compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *Id.* at 1136 (citation and internal quotation marks omitted). Contrary to Plaintiffs' objections, state access tariffs cannot be applied here where they would contradict federal law and rulings by the Federal Communications Commission ("FCC").

The combination of 47 U.S.C. § 251(b) and FCC rulings such as the 1996 *First Report and Order* (*In the Matter of Implementation of the Local Competition Provisions of the Telecommunications Act of 1996*, 11 FCCR 15499, FCC 96-325 (1996)) dictate that the state access tariffs are preempted by federal law. Section 251(b)(5), Reciprocal compensation, mandates "the duty to establish reciprocal compensation arrangements for the transport and termination of telecommunications." Paragraph 1036 of the *First Report and Order* concludes, "[a]ccordingly, traffic to or from a CMRS network that originates and terminates within the same MTA is subject to transport and termination rates under section 251(b)(5), rather than interstate and intrastate access charges." As Judge Lynch found, Plaintiffs wrongly contend that

the provisions of section 251(b)(5) and paragraph 1036 do not bar them from applying state access tariffs.

The courts have embraced federal preemption through the FCC in situations such as this. In *AT&T Corp. v. Iowa Utilities Board*, the United States Supreme Court recognized the FCC's authority, as set forth by Congress though the Telecommunications Act of 1996, Pub. L. 104-104, 110 Stat. 56, which empowered the FCC to regulate intrastate traffic through section 251(b). 525 U.S. 366, 378-80 (1999) (addressing arguments by local exchange carriers and state commissions against preemption).

Other courts across the country have followed suit and specifically applied this preemptive power to the authorities at hand. *See 3 Rivers Telephone Cooperative, Inc. v. U.S. West Communications, Inc.*, 2003 WL 24249671, *16-17 (D. Mont. 2003) (Judge Ostby found federal preemption concerning a wireless provider operating within a major trading area); *Alma Telephone Co. v. Pub. Serv. Commission of Missouri*, 183 S.W.3d 575, 577-78 (Mo. 2006) (acknowledging that the 1996 *First Report and Order*, working in conjunction with section 251(b)(1), imposes tariffs for wireless calls within a major trading area (local calls)); *Iowa Network Services, Inc. v. Qwest Corp.*, 466 F.3d 1091 , 1096-97 (8th Cir. 2006) (noting that intrastate or intraMTA wireless calls are subject to the *First Report and Order* and reciprocal compensation obligations, not state access charges).

Plaintiffs' objections to the imposition of FCC authority on

intrastate services are not well taken. A review of the Supreme Court's analysis in *AT&T* shows that Plaintiffs' arguments are readily addressed. The Court debated many of these very topics in the course of its deliberation. It noted that although it had previously curbed FCC jurisdiction in *Louisiana PSC v. FCC*, 476 U.S. 355 (1986), that case was factually inapposite and despite Plaintiffs' insistence, 47 U.S.C. §§ 152 and 201 actually support FCC jurisdiction over intrastate traffic. *AT&T*, 525 U.S. at 378-80 ("[o]ur view is unaffected by 47 U.S.C. § 152(b)" and § 201 "explicitly" grants jurisdiction). Thus, the Supreme Court has spelled out why FCC jurisdiction applies here.

Likewise, Plaintiffs' efforts to make an end run around section 251(b)(5), which imposes reciprocal compensation, through the rural telephone exemption are off the mark. P. Obj. 6-7. The rural telephone company exemption, section 251(f)(1), excuses such companies from the duty for local exchange carriers under section 251(c)(1) to negotiate in good faith to fulfill the duties of section 251(b). While there may not be a duty to negotiate, the language of section 251(c) does not trigger relief from the duties under section 251(b)(5). As Defendants noted, "the rural exemption relates to the method of establishing reciprocal compensation arrangements, not the underlying obligation to do so." D. Resp. Br. 10-11.

Nor does the Court find that the order in *In the Matter of the Petition of Blackfoot Telephone Coop.*, Mont. PSC Order No. 6218a/6219a, Docket No. 99.4.112 (2000) relieves Plaintiffs'

burden as they suggest. P. Obj. 7. Notably, Plaintiffs failed to cite to the final page where, under "Conclusions of Law", it states, "Ronan has the duty to establish reciprocal compensation arrangements with other carriers" under section 251(b)(5). The Order set forth this conclusion after stating that Ronan was an exempt rural carrier and had no duty to negotiate under section 251(c)(1).

Finally, Plaintiffs' assertion that the "*T-Mobile Order*," *In the Matter of Developing a Unified Intercarrier Compensation Regime*, 20 FCCR 4855 (2005), supports the imposition of Plaintiffs' state access tariffs is misplaced. The *T-Mobile Order* does acknowledge that "interconnection rates imposed via tariff may be permissible so long as the tariff does not supersede or negate the federal provision under sections 251 and 252." ¶ 13, *4863. However, the tariffs in question here are state access tariffs and as Judge Lynch and the *Alma Court* observed, the *T-Mobile Order* might allow for tariffs on local wireless traffic in the absence of an arrangement, or reciprocal compensation agreement, but not interstate or intrastate access charges.[2]

---

[2] In their objections Plaintiffs dispute the characterization of their tariffs; they argue the tariffs are applicable to wireless traffic and therefore within the scope of the *T-Mobile Order* that would exempt them. P. Obj. 15-16. Judge Lynch found they were state access tariffs because that the only manner in which Plaintiffs' described them in their filings. Defendants further point out that that is how Plaintiffs' actually title their tariff. D. Resp. Br. 13. The filed tariff doctrine points the Court to review the actual tariff. *See Brown*

Consequently, the Court finds that Plaintiffs' breach of contract claims, to the extent they are based upon state access claims, are dismissed because they are preempted by federal law and Plaintiffs are not entitled to relief.[3]

## C. The Court Declines to Dismiss the Federal Access Tariff Claims.

Judge Lynch recommended dismissing the breach of contract claims (Counts 1-4) under the federal access tariffs where the

---

v. *MCI WorldCom Network Servs., Inc.*, 277 F.3d 1166, 1170 (9th Cir. 2002).

The tariff here does contemplate some interaction with commercial mobile radio service providers but not in the manner anticipated in the *T-Mobile Order* or by the federal implementing provisions, which the *T-Mobile Order* specifically states must be followed. ¶ 13, *4863. The vast majority of the tariff addresses broader access charges, which is implicitly acknowledged in Plaintiffs' objectives where they point the Court to an "additional" provision that addresses wireless use that Plaintiffs apparently added in 1999. P. Obj. 15. Even with the additional provision, which consists of one sentence, the tariff does not delineate how it sorts traffic with respect to the major trading area, the basis for determining local use, and the tariff apparently does not contemplate reciprocal compensation, contrary to the provisions of section 251(b)(5). Thus, while the tariff is not entirely bereft of some application to wireless networks, the small aspects of the tariff that are applicable are minimal, inadequate, do not fit within the exception provided by the *T-Mobile Order*, and are largely inconsequential to the balance of the tariff.

While the *T-Mobile Order* does provide an avenue for local exchange carriers to better engage commercial mobile radio services, the Court does not believe that a minimal effort such as this qualifies to obviate the previously discussed rulings and the regulatory scheme. Plaintiffs note that they have previously attempted to file a wireless tariff with the Montana PCS, but that the PCS did not accept it as a wireless reciprocal compensation tariff and instead termed it an interconnection agreement—review of the tariff at hand would invite similar classification. P. Obj. 18.

[3] The Court agrees with Judge Lynch that a collateral estoppel analysis is not necessary where the claims fail in light of preemption.

federal access tariffs were never actually in front of the Court and Judge Lynch relied solely on the limited description set forth in the filings. The federal tariffs may be similar to those filed as state tariffs and thus not in compliance with federal provisions, the Court, however, in deference to the standards of Rule 12(b)(6) and the filed tariff doctrine will leave this issue for a later date in the proceedings. *See 3 Rivers Telephone Coop., Inc. v. U.S. West Communications, Inc.*, 45 Fed. Appx. 698, 699 (9th Cir. 2002).

### D.   The Unjust Enrichment Claim is Dismissed.

The Court agrees with Judge Lynch's finding that Plaintiffs' unjust enrichment claim should be dismissed. Judge Lynch characterized this claim as a possible effort to get around the federal regulatory scheme, including the provisions of the *T-Mobile Order*. Although Plaintiffs may have made some efforts they have fallen short for the reasons stated above. In any event, an unjust enrichment claim is not an appropriate means to advance their case when there are other means under the federal regulatory scheme. *See Union Telephone Co. v. Qwest Corp.*, 2004 WL *4960780, *11 (D. Wyo. 2004); *Verizon North, Inc. v. Strand*, 309 F.3d 935, 944 (6th Cir. 2002). Moreover, there is no evidence of misconduct or fault by Defendants that would invoke an unjust enrichment claim as anticipated under Montana law. *Brown v. Thornton*, 150 Mont. 150, 156, 432 P.2d 386, 390 (1967); *Randolph V. Peterson, Inc. v. J.R. Simplot Co.*, 239 Mont. 1, 8,

778 P.2d 879, 883 (1989). The Defendants' motion to dismiss the unjust enrichment claim warrants approval.

Additionally, the Court, in the absence of substantial objection, further adopts Judge Lynch's recommendations to deny the motion to dismiss regarding statute of limitations in the federal portions of Counts 1 through 4 and 10 where the Court is unable to determine a point of accrual. Plaintiffs' attorney fees claim is also dismissed because as Judge Lynch reasoned, they cannot receive fees based upon state access claims that are preempted.

### III. Conclusion

Accordingly, based upon the foregoing I adopt Judge Lynch's Findings and Recommendation (dkt #49) as set forth above: Defendants' partial motion to dismiss the second amended complaint (dkt #39, which incorporates the earlier motion to dismiss dkt #14) is GRANTED in part and DENIED in part.

Defendants' partial motion to dismiss fails in respect to the federal access tariffs in Count 1 through 4 and where it is based upon statute of limitations arguments concerning the federal portions of Count 1 through 4 and Count 10.

DATED this 2nd day of February, 2007.

Donald W. Molloy, Chief Judge
United States District Court